SCHOTT, Judge,
dissenting:
From my review of this record, I have concluded that the trial judge abused his discretion in awarding plaintiff $85,000 for general damages. As can be seen from the excerpts from the trial judge’s reasons quoted by the majority this award was for mental and physical pain and suffering and lost wages. Physical injuries were relatively minor so that the question is whether the plaintiff proved that he suffered mental injury and loss of wages as a result of the tort committed on him by Schwegmann’s employees so as to support the award.
As to plaintiff’s mental condition, the trial judge concluded that the incident sued on was a “precipitating cause” of his present condition. He based this conclusion on the testimony of Dr. Church, a clinical psychologist, who first examined plaintiff on July 12, 1973, and on the assumption that there was nothing in the record to show that plaintiff was not normal before this incident occurred.
Dr. Church did testify in response to a question by the court that the Schwegmann incident was a precipitating cause of his mental disorder. But she explained that this was based on her understanding that his functioning had been fairly good up until the time of May, 1973. Furthermore, at one point during her testimony, when asked whether plaintiff had not been “laid low” for a period of eight months prior to the Schwegmann incident, she replied that she was “sort of limited to the report” because she could not remember anything about the interview except what was in her report. Consequently, Dr. Church’s report is far more reliable than her testimony at trial.
She stated at the beginning of her report that plaintiff was complaining of headache which he felt originated at the time of the Schwegmann incident. However, she also reported that plaintiff “has had severe headaches for the past two years, apparently following an automobile accident in 1970.” She also outlined plaintiff’s work history which is significant. He had been a union functionary until elections in June, 1972, when he lost his appointed position. Thereafter, he “loafed” for eight months until he found “light work” not physically demanding. In April, 1973, he had an accident which caused him to lose this job and was unemployed at the time of the incident sued on. Dr. Church also stated that plaintiff admitted to her that he had received shock treatments 30 years ago in connection with heavy drinking and a period of depression when he was discharged from the service. In her conclusion, Dr. Church stated that plaintiff was experiencing severe psychological disturbance severe enough to warrant immediate attention.
Dr. Church’s report demonstrates that plaintiff was having problems before this incident and her findings are corroborated by the testimony of plaintiff’s wife and daughter. The wife testified that between July, 1972, and April, 1973, Landry was not able to work physically because of “constant, continued headaches.” The daughter testified in response to whether plaintiff had been under the care of a psychiatrist prior to the incident sued on that he did see a doctor 10 or 12 years before. We also know that plaintiff lost his job because of some union politics and voluntarily chose not to work for a full eight months following this development. When asked why he was idle for those eight months plaintiff answered that he had “some things to do and I did a little fishing .... ”
The record shows that plaintiff was extensively tested and treated at the Veterans Administration Hospital beginning in June, 1973. His recurring complaint throughout this period of time in June and July was that he was suffering from headaches as a result of which he was given extensive neurological testing. Interestingly, there is no indication that plaintiff was ever seen by a *347 psychiatrist while being treated at the Veterans Administration Hospital. In October and November he was treated as an out patient at this hospital, but again the emphasis was on his headaches and neurological studies to determine the cause and no mention is made of psychological problems.
While the record does support an award for aggravation of a previous condition it does not support the conclusion that plaintiff was perfectly sound before the incident and that his mental problems were all caused by the incident. Because I interpret the trial court’s reasons for judgment to convey the latter I believe the award constitutes an abuse of discretion.
Furthermore, the $85,000 award according to the trial judge was designed to compensate plaintiff for lost wages, attributable to this incident. To begin with, plaintiff had not worked at all for ten months prior to the incident in his trade as an electrician except for a brief period a month before the incident. Several years prior to July, 1972, he was not engaged in his trade as such but was a union official, and this job had been lost long before the incident sued on. Plaintiff had serious problems, having had a cervical disc just two years before the incident and a lumbar disc some eight years before. As already discussed, he was suffering from severe debilitating headaches from the time of the accident which caused his cervical disc problem until the incident at Schwegmann’s. According to Dr. Church, the one job he took in April, 1973, was “light work” as compared to what he was trained to do but had not done for several years. Thus, any lost wages which are directly attributable to this incident are based on speculation and conjecture and are not supported by his previous work record or his condition prior to the incident sued on.
Plaintiff had the burden to prove his damages. In the case of psychological injuries the evidence must be scrutinized most carefully even though the danger of denying recovery to a deserving claimant must be guarded against by the courts. Walton v. William Wolf Baking Co., Inc., 396 So.2d 962 (La.App. 1st Cir. 1981). Significantly the award in. the Walton case was supported by the testimony of two psychiatrists. In sharp contrast, the record before us does not contain the testimony of any psychiatrist to support plaintiff’s claim. Plaintiff was examined and treated at De-Paul Hospital by Dr. Ken Birchard, a psychiatrist, and he was unable to produce Dr. Birchard as a witness because his whereabouts were unknown at the time of the trial. However, the discharge sheet written on May 13, 1973, contains the following information: He was “admitted for anxiety due to incident at store.” His course in the hospital according to the doctor was “responded to rest & structural inverse. No thought disorder.” The final diagnosis was “set reaction of adulthood.” His condition on discharge was “improved” and his prognosis was “good.” While followup in the doctor’s office was recommended the record does not show that any such followup was given. According to Dr. Church plaintiff was referred to her by Dr. Birchard and, as already noted, she recommended further psychiatric treatment but despite extensive medical treatment at the Veterans Administration Hospital under the care of various neurosurgeons the record does not show that plaintiff was ever given any further psychiatric treatment from the time he last saw Dr. Birchard until the time of this trial in January, 1980. In short, the record is barren of any psychiatric testimony to support plaintiff’s claim and Dr. Church, who was not a psychiatrist but only a clinical psychologist, did not offer convincing testimony considering her own admission that she had no independent recollection of her interview of plaintiff and her report did not contain a clear cut statement as to the Schwegmann incident being a precipitating cause for all of plaintiff’s subsequent mental problems.
I respectfully disagree with my colleagues that the evidence supports the trial judge’s conclusion, I believe that the award constitutes an abuse of discretion, and I would reduce the award to $25,000 in general damages on the basis of the record.